Porto Rico Fertilizer Co., demandante-apelada-apelante *v.* Antonio Roig, demandado-apelante-apelado.

No. 4315.—*Sometido:* Mayo 23, 1928. *Resuelto:* Marzo 7, 1929.

*González Fagundo & González Jr.,* abogados del demandado-apelante-apelado; *Besosa & Besosa,* abogados del demandante-apelado-apelante.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La Porto Rico Fertilizer Co. instituyó un procedimiento en cobro de cinco mil setecientos cuarenta y cuatro dólares treinta y siete centavos ($5,744.37), que aparecían cargados a la cuenta de Antonio Roig en los libros de F. Fernández

& Compañía. En una acción anterior entablada por la Porto Rico Fertilizer Co. contra F. Fernández & Compañía, esta cuenta había sido embargada y vendida en pública subasta en ejecución de sentencia. La demandante fué la compradora en dicha venta.

Ambas partes apelan de una sentencia a favor de la demandante por la suma de tres mil ciento cuarenta y cuatro dólares treinta y siete centavos ($3,144.37), sin especial condenación de costas.

▇ El demandado Roig alega que la demanda no aduce hechos suficientes para determinar una causa de acción y cita el caso de *J. Ochoa y Hermanos* v. *Herederos de Lanza,* 17 D.P.R. 420.

En dicho caso la alegación esencial de la demanda fué una simple conclusión de derecho al efecto de que la demandante era acreedora de los demandados en virtud de ciertas obligaciones contraídas, especificando el importe. En el presente caso la demandante alega que el demandado Roig adeudaba a Fernández & Compañía, según sus libros, la suma de cinco mil setecientos cuarenta y cuatro dólares treinta y siete centavos ($5,744.37) por mercancías compradas y recibidas por él, y que esta cuenta había pasado a pertenecer a la demandante. La forma en que ocurrió esto se dirá detalladamente en otro sitio y no hay cuestión alguna envuelta respecto a la suficiencia de esta parte de la demanda. Los hechos relativos a la deuda de Roig con Fernández & Compañía son suficientes para demostrar la existencia y origen de una obligación de pagar el importe de bienes vendidos y entregados a él. *Giménez* v. *Alfonso,* 29 D.P.R. 322. Véanse también *Alfaro* v. *Alonso,* 27 D.P.R. 53, y *Lizardi* v. *Marrero,* 32 D.P.R. 598.

▇ La segunda contención del demandado Roig es que la corte inferior se excedió en la estimación del valor probatorio de los libros llevados por Fernández & Compañía y cometió error al basar su sentencia en tal evidencia.

La demandante presentó como prueba los libros de Roig,

así como los de Fernández & Compañía. De conformidad con una estipulación de las partes la corte autorizó tres peritos contables para que examinaran ambos juegos de libros y rindieran un informe. Dos de estos peritos fueron nombrados por la demandante y el tercero por el demandado. Este último perito indica en su informe que en abril 13, 1921, los dos juegos de libros estaban en completa armonía. Los contables nombrados por la demandante parecen haber basado sus conclusiones en un análisis de los libros de Roig, pasando por alto prácticamente los libros de Fernández & Compañía. Ninguno de los asientos de los libros últimamente mencionados parece haber sido atacado por Roig. Toda la controversia en la corte inferior parece haber girado sobre la cuestión de si ciertos asientos en los libros llevados por Roig deberían ser o no considerados como válidos contra Fernández & Compañía. No hubo diferencia alguna en la opinión de los peritos sobre el valor probatorio de los libros llevados por Fernández & Compañía. El juez sentenciador concedió a favor de Roig cierta partida de sus libros, que había sido rechazada por los peritos de la demandante. Al rechazar otras partidas, él estuvo de acuerdo con el informe. Cualquier referencia hecha por el juez sentenciador en relación con los libros de Fernández & Compañía agrega poco peso a la teoría de una sentencia basada en una estimación exagerada de su valor probatorio.

Pero los letrados de Roig alegan que de acuerdo con el libro de hojas sueltas llevado por Fernández & Compañía, de lo que ha podido obtenerse, la cuenta de Roig terminó en febrero de 1921 y fué adquirida por la demandante en mayo de 1922. El punto principal del argumento es que en ausencia de algo que demuestre lo que ocurrió durante el período transcurrido entre estas dos fechas, debe darse efecto al artículo 48 del Código de Comercio, que dispone, entre otras cosas, que:

"2. Si en los asientos de los libros llevados por dos comerciantes

no hubiere conformidad, y los del uno se hubieren llevado con todas las formalidades expresadas en este título, y los del otro adolecieren de cualquier defecto o carecieran de los requisitos exigidos por este Código, los asientos de los libros en regla harán fe contra los de los defectuosos, a no demostrarse lo contrario por medio de otras pruebas admisibles en derecho."

Los libros de Fernández & Compañía no estaban en poder de la demandante durante la celebración del juicio, ni en momento alguno anterior al mismo, sino que fueron presentados por el socio gestor de F. Fernández & Compañía al declarar como testigo de la demandante. La reclamación de la demandante no envolvía ninguna deuda de Roig que se alegara había sido contraída después de febrero de 1921, sino que se basaba exclusivamente en la cuenta, según aparecía en aquella época. No existe incompatibilidad entre la cuenta llevada por Fernández & Compañía y los asientos hechos por Roig en sus libros. No hay presunción alguna de que asientos condicionales o no justificados, en los libros de Roig, serían establecidos por asientos similares en los libros de Fernández & Compañía, de presentarse las hojas que faltaban.

■ Convenimos con el letrado del apelante Roig en que la corte inferior cometió error al resolver que era admisible como·prueba una certificación en forma narrativa, expedida por el Secretario de la Corte de Distrito de San Juan, exponiendo hechos y conclusiones tanto positivos como negativos, en relación con haberse dictado sentencia, expedición de la orden de ejecución y otras cuestiones que aparecían en los autos de la *Porto Rico Fertilizer Co.* v. *Fabriciano Fernández et al.,* haciendo negocios bajo la razón social de F. Fernández & Compañía. En lo que se refería a las cuestiones así expuestas, la objeción del demandado debió haberse declarado con lugar.

Sin embargo, el documento en cuestión se refiere a, e identifica una transcripción completa del diligenciamiento del márshal, o constancia oficial de lo ocurrido en la venta en

pública subasta. También se introdujo como prueba un duplicado de este documento, suscrito por el márshal, inmediatamente después de efectuarse la venta, a instancias del letrado de la demandante en el pleito original. Creemos que esto puede considerarse substancialmente como el equivalente de un certificado de venta que el márshal debe entregar al comprador de conformidad con las disposiciones del artículo 258 del Código de Enjuiciamiento Civil. Según las disposiciones de este artículo "este certificado transmite al comprador todos los derechos que sobre dicha propiedad tuviera el deudor, a la fecha del cumplimiento de la orden de ejecución o de haberse verificado el embargo." Bajo estas circunstancias y a la luz de la presunción legal relativa a la jurisdicción y regularidad de los procedimientos en una corte de récord, las otras cuestiones a que se hace referencia en la certificación del secretario deben ser consideradas como superfluas y el error alegado como no perjudicial.

■ El cuarto señalamiento es que la corte inferior erró al admitir como prueba un informe escrito de los peritos contables.

El demandado Roig mientras declaraba como testigo de la demandante fué el primero en sugerir el nombramiento de un perito contable para que examinara tanto los libros llevados por él como los de la firma Fernández & Compañía. Entonces, después de alguna discusión, se llegó a un arreglo respecto al nombramiento de peritos para que representaran a ambas partes. La forma en que el resultado del supuesto examen de los libros debía darse a conocer a la corte y a las partes, fué dejado en suspenso. En la mente del juez sentenciador parece que estuvo presente un informe escrito cuando dijo que el examen de los libros sería pospuesto hasta que pudiera obtenerse tal informe para que sirviera de base a ulteriores investigaciones. En este momento el letrado del demandado manifestó que los libros se encontraban ante la corte, la que estaba en libertad de determinar el valor proba-

torio de los mismos y expresó su opinión al efecto de que el demandado tenía derecho a estar presente en el momento en que se examinaran los libros. El juez dijo que la cuestión era cómo debía practicarse el examen. Los letrados del demandado creyeron que el examen debería practicarse en corte abierta. Entonces la corte y los letrados convinieron en que el examen en cuestión se practicara en el futuro, pero nada más se dijo acerca de un informe de los peritos como base para tal examen.

Cuando se ofreció como prueba el informe hecho por los peritos de la demandante, los letrados del demandado indicaron su disposición a admitir toda aquella parte del documento que se refiriera a la materialidad de los hechos que aparecen de los libros, pero se opusieron a que los peritos rechazaran ciertas partidas o cargos que contenían los libros llevados por Roig, bajo la teoría de que la corrección o incorrección de tales asientos era cuestión que debía ser resuelta por la corte. El juez sentenciador después de oír los argumentos anunció que el informe sería admitido para considerarlo sobre los méritos, eliminando todas aquellas conclusiones de los peritos que a ellos no corresponden. Entonces uno de los letrados del demandado dijo: ''Esa era la cuestión que yo quería levantar, Sr. Juez.'' Inmediatamente el letrado de la demandante preguntó si se admitía el documento, y el letrado del demandado contestó: ''Sí, con la salvedad que yo hice y de conformidad con la resolución de la corte.'' La corte entonces anunció la admisión del documento como prueba y el letrado no se anotó excepción alguna.

El perito que identificó el informe continuó declarando como testigo de la demandante y explicó a la corte en detalle las varias cuentas y consideraciones en que sus conclusiones estaban basadas. Todo lo contenido en el informe fué repetido por el testigo y en muchos casos explicado detalladamente en el curso de su declaración, dándose así amplia oportunidad al demandado para repreguntar.

Estamos muy de acuerdo con los letrados del apelante en que ordinariamente resoluciones relativas a la admisibilidad de prueba deben dictarse definitivamente en el momento en que se presenta la objeción y que no es recomendable la práctica de considerar tales cuestiones para resolverlas en el momento en que se decida el caso sobre sus méritos. Bajo las circunstancias peculiares del presente caso, no hallamos que se cometiera error que dé lugar a la revocación.

La quinta y última proposición levantada por el demandado-apelante es que la sentencia es contraria a la prueba. La argumentación en tanto en cuanto no es una repetición de las cuestiones ya consideradas, es que la demandante después de presentar como prueba la cuenta llevada por el demandado, no podía ser oída respecto a la corrección o validez de ninguno de los asientos en ella contenidos.

En ausencia de cualquier cita de autoridad, no estamos preparados por ahora para decir que la aquí demandante estaba obligada a aceptar como válidas y correctas, partidas cargadas a la cuenta de F. Fernández & Compañía, cuando tales partidas eran claramente de naturaleza condicional o tentativa, contrarrestadas y neutralizadas por otros asientos posteriores, y que otra prueba demostró no constituían una reclamación válida o existente contra F. Fernández & Compañía.

La demandante y apelante alega que la corte inferior erró al resolver que el demandado había satisfecho cierto pagaré otorgado por F. Fernández & Compañía a favor de Pedro Salazar y endosado por éste a la orden del demandado; al resolver que el demandado estaba justificado al cargar en sus libros el importe de tal pagaré a la cuenta de F. Fernández & Compañía por encima de su objeción y protesta, y al deducir del importe reclamado por la demandante la suma de dos mil seiscientos dólares ($2,600). El demandado Roig declaró que él había satisfecho el pagaré de Salazar. Se mostró algo evasivo respecto a la forma en que se efectuó

tal pago, pero según indicó no era necesario que el importe total de dicho pagaré hubiese sido entregado a Salazar en efectivo, por cheque o en alguna otra forma específica. También declaró que había enviado el pagaré en dos ocasiones a F. Fernández & Compañía, quien se lo devolvió en la primera ocasión. En esto él ha sido corroborado por la prueba documental y no se desprende que el pagaré le fuera devuelto por segunda vez. En los libros de F. Fernández & Compañía el pagaré tampoco aparece como una obligación pendiente a favor de Salazar, o en alguna otra forma. Roig también declaró bajo juramento que a Salazar se le había pagado igualmente. Su declaración sobre este punto no ha sido contradicha.

Los letrados de la demandante y apelante citan en relación con esta cuestión el caso de *Frías* v. *González*, 35 D.P.R. 226, el artículo 108 de la Ley de Evidencia, los artículos 1134, 1163, 1164 y 1182 del Código Civil, y los artículos 224 y 235 del Código de Comercio. Los hechos reseñados en el párrafo anterior hicieron cambiar el peso de la prueba. Los artículos del Código Civil y del Código de Comercio en que se descansa, en tanto en cuanto son aplicables al presente caso, no requieren la revocación de la sentencia.

██ La demandante y apelante también alega que la corte inferior erró al no concederle costas.

En apoyo de esta contención los letrados de la demandante y apelante hacen mención de la actitud asumida por Roig mientras declaraba como testigo de la demandante, y de la oposición activa desplegada por los letrados del demandado durante el curso del juicio. No es reprensible un grado razonable de combatividad, desplegado por parte de los letrados. La hostilidad, vacilación y evasiva por parte de un demandado al declarar como testigo del demandante, son cuestiones que deben ser reguladas y tenidas dentro de ciertos límites por la corte durante la celebración del juicio. Un desacato a la corte no puede servir de base para la concesión

de costas a favor de cualquiera de las partes en una acción civil.

En el presente caso el demandado logró reducir el importe de la reclamación de la demandante aproximadamente a la mitad, y fué sin duda en reconocimiento de este hecho que la sentencia dictada a favor de la demandante no contenía pronunciamiento alguno relativo a costas. De todos modos, no hubo abuso de discreción y no estamos dispuestos a alterar el resultado.